UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IDT DOMESTIC TELECOM, INC.,**<br><br>       **Plaintiff,**<br><br>       v.<br><br>**DOLLAR PHONE CORP., DOLLAR PHONE ENTERPRISE, INC., MOSES GREENFIELD, AND ABRAHAM GREENFIELD,**<br><br>       **Defendants.** | Civ. No. 21-07450 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Before the Court is the motion (DE 28)[1] of Defendants Moses Greenfield and Abraham Greenfield (the "Individual Defendants" or the "Greenfields") to dismiss the Amended Complaint for lack of personal jurisdiction over themselves and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction); Fed. R. Civ. P. 12(b)(6) (failure to state a claim upon which relief can be granted). For the reasons stated herein, I will **GRANT** the Greenfields' motion to dismiss for lack of personal jurisdiction.

**I.    Summary of Allegations**

Plaintiff IDT Domestic Telecom, Inc. ("IDT") is a Delaware corporation with its principal place of business in Newark, New Jersey. (Am. Compl. at ¶1.) Dollar Phone Corporation ("DPC") and Dollar Phone Enterprise, Inc. ("DPE") (the "Corporate Defendants") are New York corporations with their principal

---

[1]    Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Am. Compl." = Amended Complaint (DE 28)

1

places of business in Brooklyn, New York. (Am. Compl. at ¶¶2-3.) Moses Greenfield is the Chief Executive Officer ("CEO") of DPC. (Am. Compl. at ¶4.) Abraham Greenfield is the President and/or CEO of DPE, and the Executive Vice President of DPC. (Am. Compl. at ¶5.)

Both DPC and DPE are engaged in wholesale and retail businesses relating to the marketing and selling of telecommunication services. (Am. Compl. at ¶10.) Specifically, "DPC purchases access to long distance telecommunications service from telecommunications carriers and resells those services to other carriers." (Am. Compl. at ¶10.) DPE resells those long-distance telecommunications services, initially purchased by DPC, "to a network of independent wholesalers of prepaid calling cards nationwide." (Am. Compl. at ¶11.) Further, DPE provides those wholesalers "with telephone access numbers and personal identification numbers … that are assigned by the wholesalers to prepaid calling cards." (Am. Compl. at ¶1.)

The Amended Complaint alleges that, on June 6, 2018, IDT and DPE entered into a Mobile Top-Up Distribution Agreement (the "Distribution Agreement"), under which "DPE contracted to purchase mobile top up products (the "Products") … from IDT that enable customers to top up or recharge the airtime of a prepaid mobile account of certain mobile operators in certain countries." (Am. Compl. at ¶21.) IDT fulfilled its obligations under the Distribution Agreement, providing products to DPE and invoicing DPE for the amounts due and owing, totaling $293,045.98 plus interest and costs. (Am. Compl. at ¶¶28-30.) IDT claims that despite DPE selling the Products to "down-stream suppliers of mobile phone service" and receiving payments from purchasers, DPE failed to compensate IDT, despite numerous written demands from IDT for the balance due. (Am. Compl. at ¶¶31-34.)

On March 30, 2021, IDT filed this action. (DE 1.) In Count 1 of the Amended Complaint, IDT asserts a state-law breach of contract claim against DPE. Count 2 seeks to pierce DPE's corporate veil and hold the Greenfields personally liable for DPE's obligations under the Distribution Agreement.

Count 3 asserts a second veil-piercing claim against DPE, seeking to hold DPC liable for DPE's breach of the Distribution Agreement.

## II.      Legal Standards

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendants by a preponderance of the evidence. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). To support personal jurisdiction, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *see also Danzinger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). Further, the plaintiff must establish such "jurisdictional facts through sworn affidavits or other competent evidence …. [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004) (quoting *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990)). Indeed, the plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations … do not end the inquiry." *Time Share Vacation Club v. Atl. Resorts. Ltd.*, 735 F.2d 61, 66 & n.9 (3d Cir. 1984).

"[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales,* 384 F.3d at 97. The governing standard, then, is similar to that on an ordinary Rule 12(b)(6) motion to dismiss, which is directed to the face of the pleadings plus documents of which the court may properly taken notice. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to

3

the complaint and matters of public record"). Both sides here present the issue as being whether the Amended Complaint has sufficiently pled personal jurisdiction.

### III. Discussion

#### a. Personal Jurisdiction/Alter Ego Liability

To determine whether a court has personal jurisdiction over a defendant, a district court performs a two-step inquiry. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). First, the court is required to use the relevant state's long arm statute to see whether it permits the exercise of personal jurisdiction. *Id.*; Fed. R. Civ. P. 4(k). "Second, the court must apply the principles of due process" under the federal Constitution. *WorldScape, Inc. v. Sails Cap. Mgmt.*, No. 10-cv-4207, 2011 WL 3444218, at *3 (D.N.J. Aug. 5, 2011) (citing *IMO Indus.* 155 F.3d at 259).

In New Jersey, those issues merge because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96 (citing N.J. Ct. R. 4:4-4(c)). Accordingly, this Court can exercise personal jurisdiction over a non-resident defendant who has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

In their motion to dismiss, the Greenfields contend that this Court cannot exercise personal jurisdiction over them because the Amended Complaint fails to allege "that … [they] had any sort of contact with New Jersey, let alone systemic contacts with New Jersey." (DE 28-1 at 6.) According to the Greenfields, while the Amended Complaint describes the Corporate Defendants' business relationship with IDT, which culminated in "directed sales, advertising, promotion and distribution efforts to customers in New Jersey," IDT has not alleged "any involvement of the [Greenfields] in these

alleged activities." (DE 28-1 at 6 (citing Am. Compl. at ¶ 12).) Further, the Greenfields submit that the Amended Complaint is bereft of allegations relating to the Greenfields' "contacts with New Jersey or *any* conduct on the part of the [Greenfields] that occurred in New Jersey." (DE 28-1 at 7 (emphasis added).) Accordingly, the Greenfields assert that the Amended Complaint has not established a basis for either general or specific jurisdiction.[2]

IDT does not appear to dispute any of this, opting instead for a jurisdictional veil-piercing or alter ego theory. IDT argues that this Court has jurisdiction over the Greenfields because (1) both DPE and DPC consented to this Court's jurisdiction pursuant to the Distribution Agreement, and (2) that jurisdiction flows through to the Greenfields, who impermissibly dominated the Corporate Defendants. (DE 33 at 2, 10-11; *see also* Am. Compl., Ex. 3 at 6-7, Distribution Agreement ("This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey without giving effect to

---

[2]   General jurisdiction over an individual applies most commonly when the individual is domiciled in the forum state. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("[A]n 'individual's domicile' or home, constitutes the paradigmatic 'forum for the exercise of general jurisdiction.'") (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain their indefinitely." *Washington v Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "In determining an individual's domicile, a court considers several factors, including 'declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business.'" *Park v. Tsiavos,* 165 F. Supp. 3d 191, 199 (D.N.J. 2016), *aff'd*, 679 F. App'x 120 (3d Cir. 2017) (quoting Krasnov v. Dinan, 465 F.2d 1298, 1301 (3d Cir. 1972)) (laying out the standard of establishing domicile in the context of diversity jurisdiction).

On the other hand, specific jurisdiction arises from the defendant's forum related activities that give rise to the plaintiff's claims. The relevant analysis has three parts:

> First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted); *see also Strategic Prod. & Servs., LLC v. Integrated Media Techs., Inc.*, No. CV1800694KSHCLW, 2019 WL 2067551, at *7 (D.N.J. May 10, 2019).

5

any conflict of law principles thereof which might require the application of the law of another jurisdiction.").)

Jurisdiction over the Corporate Defendants is not contested. The question is whether IDT's veil-piercing and alter-ego claims provide sufficient grounds for this Court to extend that jurisdiction to the Greenfields.

The Court begins by considering which state's law governs IDT's veil-piercing claim. *See Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 424 (D.N.J. 2019). The New Jersey Limited Liability Company Act (the "NJLLCA") states that: "[t]he law of the state … under which a foreign limited liability company is formed governs … the liability of a member and a manager as manager for the debts, obligations, or other liabilities of the company." N. J. Stat. Ann. 42:2c-57(a)(2). That state would be New York, where DPE is incorporated. Courts in this district, however, have also applied the law of "the state that has the most significant connection with the parties and the transaction." Here, that would probably be New Jersey, the situs of the Distribution Agreement. *See Linus*, 376 F. Supp at 424; *Torus U.S. Servs., Inc. v. Hybrid Ins. Agency, LLC*, No. 14-01630, 2015 WL 6445788, at *4 n.9 (D.N.J. Oct. 22, 2015); *Mark IV Transp. & Logistics, Inc. v. Lightning Logistics, LLC*, No. 09-6480, 2014 WL 7073088, at *3 (D.N.J. Dec. 12, 2014).

The parties appear to agree, however, that New Jersey law applies. Further, there is no significant conflict between New Jersey and New York law on these veil-piercing issues. I will therefore apply New Jersey law in assessing whether IDT has alleged a plausible veil-piercing claim.[3] The factors relevant to

---

3    *See Mohegan Lake Motors, Inc. v. Maoli*, No. 16-CV-6717 (NSR), 2021 WL 4136881, at *10 n.4 (S.D.N.Y. Sept. 10, 2021) ("No conflict exists between the laws of New Jersey and New York for piercing the corporate form."); *Transmodal Corp. v. EMH Assocs., Inc.*, No. CIV 09-3057 (FSH), 2010 WL 3937042, at *5 (D.N.J. Oct. 1, 2010) (holding that there is no conflict between the veil-piercing laws of New York and New Jersey); *Pactiv Corp. v. Perk-Up, Inc.*, No. CIV. A. 08-05702 DMC, 2009 WL 2568105, at *6 (D.N.J. Aug. 18, 2009) ("Because the legal analysis required to determine whether piercing the veil is appropriate under New Jersey law is substantially similar to that required by New York law, the Court need not address the choice of law question at this time.")

veil-piercing for jurisdictional purposes are similar to those used to impute liability. *See, e.g.*, *Mark IV Transportation & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 107 (3d Cir. 2017); *Bootay v. KBR, Inc.*, 437 F. App'x 140, 143 (3d Cir. 2011); *Linus Holding*, 376 F. Supp at 424-425.

To pierce the corporate veil, two elements must be shown: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *State Cap. Title & Abstract Co. v. Pappas Bus. Servs.*, LLC, F. Supp. 2d 668, 679 ((D.N.J. 2009) (quotations and citations omitted). Ultimately, even in situations where one individual shareholder or director dominates the corporate entity, "liability generally is imposed only where the [dominant party] has abused the privilege of incorporation by using the [corporate form] to perpetrate a fraud or injustice, or otherwise to circumvent the law." *State Dept. of Env't Prot. v. Ventron Corp.*, 94 N.J. 473, 500-501 (N.J. 1983); *see also Staff4Jobs, LLC v. List Logistics, LLC*, No. 318CV13399BRMLHG, 2019 WL 2635997, at *5 (D.N.J. June 27, 2019); *Rowen Petroleum Props., LLC v. Hollywood Tanning Sys., Inc.*, 899 F. Supp. 2d 303, 308 (D.N.J. 2012).

As to the first prong, *i.e.*, unity of interest and ownership, the Third Circuit has applied six non-binding factors: (1) gross undercapitalization; (2) failure to observe corporate formalities, and non-payment of dividends; (3) the insolvency of the debtor corporation at the relevant time; (4) siphoning of funds of the corporation by the dominant stockholder; (5) non-functioning of other officers or directors, and absence of corporate records; and (6) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders. *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988); *Bd. Of Tr. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 (3d Cir. 2002).

The Amended Complaint alleges that the Greenfields directed DPE's "business decisions regarding the Distribution Agreement" and "abused the corporate form of DPE because they had attempted to structure them in such a way as to insulate DPE from liability." (Am. Compl. at ¶44.) IDT argues, in part, that the Greenfields should be personally liable for DPE's obligations based on the following allegations:

- At all relevant times, no officer(s) or director(s) other than the Greenfields, the dominant officers and/or directors of DPE, actually functioned in the key business decision-making of DPE;

- At all times, the Greenfields used their control over the assets and business decisions of the DPE, to further their personal interests as the ultimate owners of the company;

- At all relevant times, the Greenfields used their control over the assets of DPE, as if those assets were their own;

- At all relevant times, DPE failed to observe corporate formalities;

- At all relevant times, DPE failed to keep proper corporate records; and

- At all relevant times, when taking into account its obligations, including its obligations under the Distribution Agreement, DPE was undercapitalized and functioned essentially as a corporate shell that passed its contractual rights and obligations to [DPC].

(Am. Compl. at ¶59.)

These allegations, although presented as factual, are merely conclusory restatements of the legal elements of veil-piercing. They have little factual content and are insufficient to survive a motion to dismiss. Notably, the Amended Complaint does not allege with any specificity *how* the corporate form was abused, *how* DPE, under the Greenfields' control, failed to keep proper corporate records, *how* the Greenfields used DPE to further their personal interests, and *what* corporate formalities were not adhered to. Courts in this

8

District have routinely dismissed veil-piercing claims which, like this one, were devoid of supporting factual allegations.[4]

IDT suggests that certain "particularized" allegations support its veil-piercing claim. First, IDT argues that Abraham Greenfield's January 18, 2008 declaration in a prior litigation between IDT and the Corporate Defendants, because it was filed "on behalf of and with the consent of Defendants Dollar Phone Services, Inc., [DPE], [DPC], and Dollar Phone Access, Inc," evinces sufficient "unity of interest and ownership" between the Greenfields and DPE.[5] Second, IDT cites DPE and DPC's counterclaim against IDT, in the same litigation, highlighting (with respect to the counterclaim) that: (1) "there is no distinction between or among any of the Dollar Phone entities" including DPE and DPC; and (2) "[a]ll positions, denials, admissions, claims, averments of fact, and requests for relief … are made by and on behalf of DPC and [DPE] without any distinction between the entities." (Am Comp. ¶¶ 39-41.)

The Court rejects the proposition that a corporate officer's filing a single declaration on behalf of affiliated companies, or those affiliated companies' sharing of a common legal position, establishes that veil-piercing is

---

[4]  *See, e.g., Gerber v. A&L Plastics Corp.*, No. CV1912717ESCLW, 2021 WL 3616179, at *6 (D.N.J. Aug. 16, 2021) ("Plaintiffs allege that these two entities were operated and managed as a common business entity and failed to observe corporate formalities; however, these buzzwords are not supported by any factual allegations."); *Creditors Relief LLC v. United Debt Settlement LLC*, No. CV 17-7474, 2019 WL 7288978, at *4 (D.N.J. Dec. 30, 2019) ("[The Complaint] does not plausibly allege in what way [the Defendants] have blurred their corporate identities, nor through what mechanism [the corporate officer] dominated EIIS."); *Linus Holding*, 376 F. Supp. at 427 ("Plaintiff must plead specific facts with respect to how the affiliated entities and individuals alleged controlled or dominated Mark Line."); *Staff4Jobs*, 2019 WL 2635997 at *5 ("[Plaintiff] has provided no factual allegations that would support a veil piercing claim" and merely alleges "conclusory statements without factual support.")

[5]  Am. Comp. ¶¶ 36-38 (citing Reply Declaration of Abraham Greenfield in Support of Dollar Phone's Motion for Protective Order to Maintain Discovery Confidentiality Obligations, *IDT Telecom Inc. et. al. v. CVT Prepaid Solutions, Inc., et. al.*, No. 2:08-cv-01076-GEB-MCA (D.N.J. Jan. 18, 2018) ("Abraham Decl.")). The Reply Declaration is properly considered because it is cited in the complaint, and because the court may in any event take judicial notice of it. It is cited, not for the truth of its contents, but for its existence and legal effect.

9

appropriate. To render those companies and corporate officers liable under an alter-ego theory, there must be factual allegations or proofs bearing on the Third Circuit's veil-piercing factors. In any event, nothing in either of these filings can be interpreted as bearing on DPE's financial condition and corporate practices, or the Greenfields' alleged improper control and influence over DPE.

IDT also asserts that DPE was "undercapitalized yet directed DPE to enter into, and default on its payment obligations under, the Distribution Agreement." (Opp. at 9-10) In that connection, IDT cites (1) an April 7, 2021 judgment and lien entered against DPE, in the amount of $48,405.18, in the Kings County Supreme Court (New York); (2) a March 25, 2021 arbitration award issued against DPE in the United States District Court for the Eastern District of New York, in the amount of $309,858.57;[6] and (3) a complaint filed by BMO Harris Bank, N.A. in the Kings County Supreme Court (New York), which alleges that DPC is in default of a Diners Club credit agreement with a balance of $113,703.28. (Am. Compl. at ¶¶ 48-50.)

The Court disagrees that this evidence demonstrates DPE's undercapitalization or that any financial shortfall was "directed" by Individual Defendants. It is not enough to demonstrate that a corporate defendant has fallen on hard times. Critically, to establish undercapitalization, IDT "must sufficiently allege that [DPE] was inadequately capitalized, '*at the time of its organization.*'" *Linus Holding*, 376 F. Supp. at 426 (citing *Trs. Of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir. 2003)) (emphasis added). While these judgments and awards may be probative of DPE's current financial condition, they say little about the adequacy of DPE's capitalization at the time of its formation. That "highly factual" issue depends on contemporaneous evidence relating to "the industry, size of the debt, account methods employed, and like factors." *Lutyk*, 332 F.3d

---

[6] IDT additionally notes that an entry of default was entered against DPE on June 14, 2021, for failure to appear or otherwise defend the action seeking to confirm the arbitration award. Am. Compl. ¶ 49.

at 197 (quotations and citations omitted). Here, IDT has not alleged any facts concerning the level of capital DPE would have reasonably required at the outset to operate successfully. *See Linus Holding*, 376 F. Supp. at 426; *Las Vegas Sands Corp. v. ACE Gaming, LLC*, 713 F. Supp. 2d 427, 445 (D.N.J. 2010). Thus, the Court finds that IDT has not sufficiently alleged that IDT was undercapitalized when it was formed.[7]

The same factual allegations might be cited in support of a claim that the Greenfields "siphoned" assets from DPE to benefit themselves or prevent DPE from satisfying judgments. As to siphoning assets personally, IDT does not make a factual allegation or identify any evidence of such looting. *See Juul Labs, Inc. v. 4X Pods, Eonsmoke, LLC*, No. CV1815444KMMAH, 2021 WL 62316, at *8 (D.N.J. Jan. 7, 2021); *Werner Deconstruction, LLC v. Siteworks Servs. NY, Inc.*, No. CV 15-7682 (MLC), 2017 WL 1591866, at *6-7 (D.N.J. Apr. 28, 2017); *Watson v. Sunrise Sr. Living Servs., Inc.*, No. CIV.A. 10-230 KM, 2013 WL 103966, at *14 n. 11 (D.N.J. Jan. 8, 2013). Moreover, while IDT argues that the Greenfields "directed DPE to enter into, and default on its payment obligations under, the Distribution Agreement" (DE 33 at 14), the Amended Complaint lacks any particularized factual allegations bearing on the Greenfields' personal involvement in either: (1) the negotiation and execution of

---

[7] For the same reason, this Court rejects IDT's argument that the Corporate Defendants admitted that they were grossly undercapitalized in their amended counterclaim. There, the Corporate Defendants stated that (1) a March 23, 2007 settlement agreement between IDT and the Corporate Defendants left the Corporate Defendants "in a substantially weaker financial position"; and (2) IDT breached the settlement agreement by encouraging "the Attorneys General of states including New York, New Jersey, Texas and Illinois to commence and/or continue investigations" into the Corporate Defendants, leaving them in a "substantially weaker financial position". Opp at 9 (citing DE 35 at ¶¶ 77-80).

First, the Corporate Defendants voluntarily dismissed their amended counterclaim. See DE 43, 44. Second, assuming arguendo that either the 2007 settlement agreement or the attorneys' generals' investigations into the Corporate Defendants left DPE in a weaker financial position, they do not bear on undercapitalization, *i.e.,* DPE's financial condition at its founding in 1999. Third, at any rate, IDT cannot pierce the corporate veil based on its own acts. Fourth, it is not plausible that the Individual Defendants controlled the decision making process of four states' attorney generals.

11

the Distribution Agreement; or (2) DPE's business decisions leading to company's alleged breach of the Distribution Agreement. As the Greenfields note in their motion to dismiss, neither of the Individual Defendants was even a signatory to the Distribution Agreement.[8] (See DE 28-1 at n. 10.) And we cannot lose sight of the fact that the issue is veil-piercing for jurisdictional purposes. Allegations that the Greenfields (New York residents) siphoned off funds from DPE (a New York corporation) would not support this Court's exercising personal jurisdiction over the Individual Defendants, in the absence of other factual support suggesting that the Greenfields impermissibly dominated DPE. In sum, this factor may be a slightly closer call, but in light of the failure of the other factors, it does not plausibly support veil-piercing.

IDT has failed to plausibly allege facts that would support its claim of alter ego or veil-piercing. Accordingly, those doctrines provide no basis for this Court to exercise personal jurisdiction over the Greenfields. The Greenfields' motion to dismiss for lack of personal jurisdiction is granted.

### b. Jurisdictional Discovery

In the alternative, IDT argues that this Court "should be allowed to conduct jurisdictional discovery" because it has alleged facts suggesting "with reasonable particularity the possible existence of the requisite contacts between the party and the forum state." (Opp. at 13 (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).)

The Supreme Court has advised that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978). Therefore, courts in the Third Circuit have permitted jurisdictional discovery "unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us*, 318 F.3d at 456 (citation omitted). Nevertheless, jurisdictional discovery is not

---

[8] Further, the Individual Defendants submit that the Amended Complaint does not allege that Moses Greenfield "has any affiliation" with DPE. DE 28-1 at n. 10.

warranted unless the plaintiff "presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the [arty] and the forum state....'" *Id.* (quoting *Mellon Bank*, 960 F.2d at 1223). A plaintiff may not "undertake a fishing expedition based upon the guise of jurisdictional discovery*." Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n. 38 (3d Cir. 2015) ("[J]urisdictional discovery is not available merely because the plaintiff requests it.")

IDT has not presented any factual allegations suggesting that jurisdictional discovery is warranted here. Notably, the Amended Complaint does not allege any facts suggesting that (1) the Greenfields have sufficient contacts with this forum; (2) the Greenfields had any involvement in the negotiation and execution of the Distribution Agreement, or were personally responsible for DPE's alleged failure to comply with the terms of the Distribution Agreement; and (3) that the Greenfields and DPE are alter egos. *See Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (affirming the District Court's denial of jurisdictional discovery, where the plaintiff "did not present factual allegations that suggested with reasonable particularity the possible existence of the requisite contacts between appellees and the forum state to warrant jurisdictional discovery"); *Laverty v. Cox Enterprises, Inc.*, No. CV181323FLWTJB, 2019 WL 351905, at *6 (D.N.J. Jan. 29, 2019). Jurisdictional discovery is not warranted.

IV. **Conclusion**

For the reasons set forth above, I will **GRANT** the Greenfields' motion (DE 28) to dismiss the Amended Complaint as against the Individual Defendants for lack of personal jurisdiction. An appropriate order follows.
Dated: April 7, 2022

/s/ Kevin McNulty
_____
**Kevin McNulty**
**United States District Judge**

13